Argued and submitted March 30, sentence vacated; remanded for resentencing; otherwise affirmed December 29, 2004

STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

SERGIO CRESCENCIO-PAZ,
*Respondent - Cross-Appellant.*

0108-35851; A118605

103 P3d 666

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the briefs were

Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rankin Johnson IV, Deputy Public Defender, argued the cause for respondent - cross-appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, and Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Landau and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

The state appeals defendant's sentence on his conviction of robbery in the second degree, arguing that the trial court erred in imposing a downward departure sentence under ORS 137.712 without making findings as to whether defendant was disqualified from a departure sentence under the criteria set forth in paragraph (2)(d). On cross-appeal, defendant appeals his conviction, contending that the trial court improperly denied his motion to suppress evidence. We reverse and remand for resentencing on appeal and affirm defendant's conviction on cross-appeal.

The relevant facts in this case are undisputed. In August 2001, Officer Daniels located defendant near the scene of a robbery that had just occurred. Defendant was sweaty, out of breath, and bleeding from a cut on his finger. Although the officer had received inconsistent information as to the suspect's description, he determined that defendant's appearance matched earlier information that he had received about the suspect. The officer patted defendant down, handcuffed him, and placed him in the patrol car. In response to the officer's inquiry as to his name, defendant indicated in Spanish that he did not speak English. The officer searched defendant's pockets for evidence of defendant's identification and discovered handgun cartridges and $512 in cash. Approximately 10 or 11 minutes after the time that the officer initially stopped defendant, another officer brought the victim of the robbery to the patrol car. The victim identified defendant as the robber. Defendant was then formally placed under arrest and charged with robbery in the second degree.

Before trial, defendant moved to suppress "the fruits of [the illegal arrest,] including physical evidence seized, statements [made by him to the police], and on site identifications [by the victim]." He argued that he had been arrested without probable cause at the point that the officer handcuffed him. The trial court denied defendant's motion, concluding that, although the officer did not have probable cause to arrest defendant, he had reasonable suspicion and that the

approximately 10-minute period of detention of defendant until the witness arrived was not unreasonable.[1]

Defendant was convicted after a jury trial of robbery in the second degree. ORS 164.405. Second-degree robbery is subject to the mandatory minimum sentencing provisions of Ballot Measure 11 (1994), codified at ORS 137.700. For purposes of sentencing, the state presented evidence that defendant "reasonably put the victim in fear of imminent physical injury" in order to establish that defendant was disqualified from a downward departure sentence under ORS 137.712(2)(d)(C). The state had not made that allegation in its indictment, nor had it presented evidence on that issue to the jury.

Before sentencing, defendant filed a motion for relief from ORS 137.700, requesting a downward departure sentence under ORS 137.712(1) from the 70-month minimum sentence. In his memorandum to the court, he contended that the burden was on the state to prove the existence of any fact that would disqualify him from a downward departure sentence under ORS 137.712(2)(d). Defendant further contended that the state's post-trial assertion that defendant's conduct reasonably put the victim in fear of imminent physical injury

---

[1] At the hearing on defendant's motion, the trial court found,

"[Defendant] was initially stopped as soon as he was approached. He was placed into custody when the handcuffs were placed on him and taken to the police car. To the extent that full custody constitutes an arrest, he was under arrest at that time. But as a legal status, he was in custody being detained for the purpose of identification at that point. And if the identification had been negative, he would have had to have been released at the time of identification, but the identification being more than negative, being equivocally positive. He was then placed under arrest for the crime of robbery. That's my legal conclusion based on the facts as I found them.

"* * * * *

"At the time [the officer] saw defendant, based on the timing of the robbery, * * * the description put out over the air, the time of the sighting of the defendant, the 11 blocks from the scene, it was reasonable for the officer to believe that there was a strong possibility that this was the perpetrator of the robbery. That gave him legal authority, whether you call it probable cause to arrest or authority to detain, it gave—those facts gave him legal authority to put the defendant under full custody, handcuff him, give him a full search for officer safety to make sure he had no weapons, put him in a police car in handcuffs, and hold him for the 10 minutes that was necessary to get the witness to the scene, to either identify him as the perpetrator or exclude him as the perpetrator."

was an allegation of new criminal conduct, entitling defendant to a jury determination on that issue.

The sentencing court granted defendant's motion and concluded that he was entitled to a jury determination on the issue. Specifically, the court explained:

> "Here, if the conduct of the defendant reasonably put the victim in fear of imminent (significant) physical injury, there is a mandatory minimum sentence. If the conduct did not, then the court is granted discretion to consider whether there are substantial and compelling reasons to depart. A defendant has the right to a jury determination of this issue. As this right was not accorded in this case, the defendant must be given consideration for a downward departure under ORS 137.712."

The sentencing court determined that defendant was eligible for a departure under ORS 137.712 and imposed a 35-month presumptive sentence as a downward departure without making any findings under ORS 137.712(2)(d).

■ We begin with defendant's cross-appeal because a ruling that the trial court erred in denying defendant's motion to suppress would require reversal of his conviction and sentence, making the state's appeal moot. Defendant asserts that the officer arrested him unlawfully in violation of both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. He points to the fact that the trial court found that the arresting officer did not have a subjective belief that it was more likely than not that defendant had committed the robbery when the officer handcuffed him and placed him in the patrol vehicle. It follows, according to defendant, that, because we are bound by the trial court's finding regarding the officer's subjective state of belief, his arrest was unlawful and his motion to suppress should have been granted.

The state responds that, even if defendant were correct that the officer's actions of handcuffing him and placing him in a patrol car converted the encounter from a lawful stop to an unlawful arrest, he fails to identify anything about that illegality that caused the police to discover any of the evidence at issue. In support of its argument, the state points out that defendant does not challenge on appeal the trial

court's ruling that he was lawfully stopped based on the officer's reasonable suspicion that he was the robbery suspect for whom police were looking; nor does he argue that the officer was not entitled to frisk him pursuant to the stop, a frisk that resulted in the discovery of the cartridges for a handgun and $512 in cash. Also, the state emphasizes that defendant does not contend that the 10-minute detention for the purpose of permitting the victim to make an identification was unlawful. The state argues that, under the circumstances, the police did not exploit or trade on the fact that they handcuffed defendant and put him in a patrol car to obtain the victim's identification of him and that, therefore, the trial court correctly denied defendant's motion to suppress.

We agree with the state's argument. The fact that the identification by the victim occurred after an illegal arrest does not automatically result in its exclusion from evidence if the identification would have occurred anyway as a result of the lawful stop. *See generally State v. Rodriguez*, 317 Or 27, 38-42, 854 P2d 399 (1993) (holding that suppression of secondary evidence depends on whether the police obtained the evidence through an "exploitation" of the prior illegality). Here, defendant does not contest the legality or the length of the stop. Moreover, the evidence is uncontradicted that the victim was taken to the scene to make an identification as a result of the lawful stop and not because defendant was handcuffed and put in a patrol car. Consequently, there is no causal connection between the victim's identification of defendant and the alleged illegality. Therefore, we affirm on defendant's cross-appeal.

■     We turn to the state's appeal. The state challenges the sentencing court's imposition of the 35-month downward departure sentence, contending that the court erred in ruling that the state must allege in the charging instrument and prove to the jury during trial any disqualifying factor set forth in ORS 137.712(2)(d). The state emphasizes that defendant did not receive an "enhanced sentence" as contemplated by the holdings in *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981), *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and that, therefore, there is no constitutional requirement that it disprove the qualifying factors for what

amounts to a downward departure sentence from the prescribed mandatory minimum sentence under Measure 11.

In his answering brief to this court, defendant initially responded that the trial court's ruling is required by both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. However, defendant withdrew his arguments under the federal constitution at oral argument. Thus, the remaining issue is whether Article I, section 11, requires the state to allege and to prove to a jury that the victim was put in reasonable fear of imminent physical injury on the charge of second-degree robbery in order to permit the sentencing court to impose the mandatory minimum sentence required by ORS 137.700 rather than the downward departure sentence authorized by ORS 137.712.[2]

We begin our analysis by examining the controlling constitutional and statutory provisions. Article I, section 11, provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury[.]" Defendant was convicted of robbery in the second degree under ORS 164.405, which provides, in relevant part, that a person commits robbery in the second degree if the person violates ORS 164.395 and represents by word or conduct that the person is armed with a deadly or dangerous weapon. ORS 164.395, as incorporated by reference in ORS 164.405, provides, in relevant part, that a person commits the crime of robbery in the third degree if, in the course of committing or attempting to commit the crime of theft, the person uses or threatens the immediate use of physical force upon the victim with the intent of preventing or overcoming resistance to the taking or the retention of the property.

Under Measure 11, a conviction for second-degree robbery is subject to a mandatory minimum sentence of 70 months. ORS 137.700(2)(a)(R). However, ORS 137.712 authorizes a sentencing court to impose a sentence that

---

[2] After oral argument occurred in this case, the United States Supreme Court decided *Blakely v. Washington*, 542 US _____ , 124 S Ct 2531, 159 L Ed 2d 403 (2004). Because defendant has withdrawn his arguments under the federal constitution and under *Apprendi*, we need not consider the holding in *Blakely* either.

departs downward from the minimum sentence mandated by ORS 137.700(2)(a)(R). ORS 137.712(1) provides, in pertinent part, that

> "the court may impose a sentence according to the rules of the Oregon Criminal Justice Commission that is less than the minimum sentence that otherwise may be required by ORS 137.700 or 137.707 if the court, on the record at sentencing, makes the findings set forth in subsection (2) of this section and finds that a substantial and compelling reason under the rules of the Oregon Criminal Justice Commission justifies the lesser sentence."

ORS 137.712(2)(d) provides that, with regard to a conviction for robbery in the second degree, a court may impose a lesser sentence than the mandatory minimum sentence if the court finds by a preponderance of the evidence:

> "(A)   That the victim did not suffer a significant physical injury;
>
> "(B)   That, if the defendant represented by words or conduct that the defendant was armed with a dangerous weapon, the representation did not reasonably put the victim in fear of imminent significant physical injury;
>
> "(C)   That, if the defendant represented by words or conduct that the defendant was armed with a deadly weapon, the representation did not reasonably put the victim in fear of imminent physical injury; and
>
> "(D)   That the defendant does not have a previous conviction for a crime listed in subsection (4) of this section."

In light of Article I, section 11, and the above statutes, defendant argues:

> "Defendant does not have a conviction for a listed offense, and the victim was not injured. Accordingly, the [trial] court had the discretion to impose a shorter sentence unless the victim was in fear of physical injury. That is a fact relating to the offense, and therefore, under the Oregon Constitution, the state has the burden of proof on those facts, and those facts are to be determined by the jury."

Defendant relies on the holdings in *Quinn* and *Wedge* in support of his argument.

In *Quinn*, the Supreme Court struck down a statute that imposed the death penalty for homicide if the offender was found to have taken the victim's life "deliberately" and with "reasonable expectation of death" on the ground that it violated Article I, section 11. The statute, *former* ORS 163.116 (1979), *repealed by* Or Laws 1981, ch 873, § 9, required the trial judge, not the jury, to determine the mental state that could enhance the penalty from life imprisonment to the death penalty. The Supreme Court held that the defendant had a right to a jury determination of a factual element of the crime of capital murder under Article I, section 11, of the Oregon Constitution because the offender's mental state could determine whether his crime constituted capital murder or murder. In reaching its decision, the court distinguished between a fact that was part of the act declared by the legislature to be criminal and facts upon which enhanced penalties were based. *Quinn*, 290 Or at 406.

In *Wedge*, the defendant was convicted of robbery in the first degree. Pursuant to statute, the sentencing court imposed a minimum five-year sentence for the use of a firearm during the commission of the robbery, even though the jury did not necessarily find that the defendant had personally used or threatened to use a firearm. The Supreme Court, relying on *Quinn*, held that the use or threatened use of a firearm was a finding that "goes to the criminal act for which this defendant is punished, and thus is closer to an element of the crime than to a characterization of the defendant." *Wedge*, 293 Or at 607. As a result, the court concluded that the defendant had been deprived of his constitutional right to a jury trial on that issue.

As the state correctly points out, whether the victim was put in reasonable fear of imminent physical injury is not an *element* of the crime of robbery in the second degree, nor was that fact used to enhance defendant's punishment. However, defendant argues that, when ORS 164.405 and ORS 137.712(2)(d) are read together, they create two crimes, "un-ameliorated robbery in the second degree and ameliorated robbery in the second degree" in light of the reasoning of *Quinn* and *Wedge*. But that argument fails to acknowledge that the facts in issue in those cases, whether the defendant acted deliberately with the reasonable expectation of taking

the victim's life and whether the defendant used or threatened to use a firearm, operated to enhance punishment, not to diminish it. Article I, section 11, guarantees that a defendant has a constitutional right to have all elements that subject the defendant to punishment decided by a jury. *Wedge*, 293 Or at 606. In contrast, ORS 137.712(2)(d) permits a court to exercise its discretion to impose a lesser punishment if it makes certain findings. Consequently, there is nothing in the reasoning in *Quinn* or *Wedge* that persuades us that defendant's argument is cognizable under Article I, section 11. The sentencing court erred when it held otherwise.

The state also asserts that the sentencing court erred in not making the necessary findings as to whether defendant was entitled to a downward departure sentence under the criteria set forth in ORS 137.712(1)(a). The state did not preserve the latter contention in the trial court for purposes of appeal. However, the trial court will have the opportunity to make findings regarding the requirements of the statute if it elects to depart from the minimum sentence on remand.

Sentence vacated; remanded for resentencing; otherwise affirmed.